**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

OTIS MAYS,                                                                                    PLAINTIFF
Reg. # 21955-041

v.                                          2:22CV00167-KGB-JTK

FEDERAL BUREAU OF PRISONS, et al.                                       DEFENDANTS

**ORDER**

      Otis Mays ("Plaintiff") is in custody at the Talladega Federal Correctional Institution in Talladega, Alabama.   (Doc. No. 2).   Plaintiff's claims in this case arise from events that took place during the time Plaintiff was confined at the Forrest City Medium Federal Correctional Institution ("FCI-Forrest City").   (Doc. No. 1).   Plaintiff sued the Federal Bureau of Prisons and 41 FCI-Forrest City officials alleging violations of his federally protected rights.[1]   (Id.).   The Court must screen Plaintiff's claims pursuant to the Prison Litigation Reform Act ("PLRA").

**I.        Screening**

      The PLRA requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a).   The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief.    28 U.S.C. § 1915A(b).

      An action is frivolous if "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).    Whether a plaintiff is represented by counsel or is appearing

---

[1] Another inmate was listed as a Plaintiff on the Complaint and signed the Complaint. (Doc. No. 1).    The Court separated the claims into separate lawsuits.    The related lawsuit is Perkins v. Federal Bureau of Prisons, et al., 2:22-cv-00168-KGB-JTK.

pro se, his complaint must allege specific facts sufficient to state a claim.   See Martin v. Sargent, 780 F .2d 1334, 1337 (8th Cir.1985).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).   In reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction.   Haines v. Kerner, 404 U.S. 519, 520 (1972).   The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless.   Denton v. Hernandez, 504 U.S. 25, 32 (1992).

## II.   Discussion

Plaintiff sued Defendants under Bivens v. Six Unknown Agents of Federal Bureau of Narcotics alleging violations of their federally protected rights.

### A.   Personal Harm and No Right to Represent Others

"[F]or a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm." Hollingsworth v. Perry, 570 U.S. 693, 704 (2013).   See also 42 U.S.C. § 1983 (liability "to the party injured").   To the extent a plaintiff alleges that a defendant's actions harmed others, the plaintiff lacks standing to bring that claim. Hodak v. City of St. Peters, 535 F.3d 899, 904 (8th Cir. 2008) ("As a general rule, a plaintiff may only assert his own injury in fact and 'cannot rest his claim to relief on the legal rights or interests of third parties.'").

Further, pro se litigants are not authorized to represent the rights, claims and interests of other parties in any cause of action, including a class action lawsuit.   Fymbo v. State Farm Fire and Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others"); Oxendine v. Williams, 509 F.2d 1405,

1407 (4th Cir. 1975); cf. <u>Knoefler v. United Bank of Bismarck</u>, 20 F.3d 347, 348 (8th Cir. 1994) ("A nonlawyer . . . has no right to represent another entity . . . .").

Many of the allegations are written in terms of "Plaintiffs" – plural.   As a result, the Court is not always able to determine the alleged injuries Plaintiff personally suffered.   Other portions of the Complaint are specific to the second inmate identified as a Plaintiff.   As explained above, Plaintiff cannot represent the rights, claims or interests of others.   As such, claims regarding the second inmate are not properly brought in this action.

### B.   Grievance Procedures and Participation in Programs

Plaintiff complained that grievances are unavailable and are going unanswered.   (Doc. No. 1 at 35-36).   But "the federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure."   <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam); <u>Buckley v. Barlow</u>, 997 F.2d 494, 495 (8th Cir. 1993).

Plaintiff also complains that as a result of being in the special housing unit ("SHU"), he has been prevented from participating in programs through which he would have been able to receive "extra time" in the halfway house or home confinement.   (Doc. No. 1 at 38, 39).   Plaintiff, however, has no protected liberty interest in extra time placed in a halfway house or home confinement.   See <u>Staszak v. Romine</u>, 221 F.3d 1344 (8th Cir. 2000) (per curiam); 18 U.S.C. § 3621; 18 U.S.C. § 3624; <u>Stine v. Fox</u>, 731 Fed. Appx. 767, 769-70 (10th Cir. 2018).

Because there is no protected liberty interest in the grievance procedure or additional time placed in a halfway house or home confinement, these claims fail as a matter of law.

### C.   Other <u>Bivens</u> Claim

As mentioned above, Plaintiff filed suit under <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>.   403 U.S. 388 (1971).   "[A] *Bivens* action is the federal analog to suit

brought against state officials under . . . 42 U.S.C. § 1983." Hartman v. Moore, 547 U.S. 250, 254 n.2 (2006).   A claim under Bivens is the same as an action under 42 U.S.C. § 1983, "except that the former is maintained against federal officials while the latter is against state officials." Sanchez v. U.S., 49 F.3d 1329, 1330   (8th Cir. 1995) (per curiam).   Generally, case law analyzing 42 U.S.C. § 1983 claims applies to Bivens cases.   See Ibrahim v. United States, 868 F. Supp. 2d 27, 30 (E.D.N.Y. 2012).

### 1.    Official Capacity Claims; Claims Against the FBOP and FCI-Forrest City

A claim against an official of the United States is the equivalent to a claim against the United States; sovereign immunity bars Bivens claims against the United States.   Buford v. Runyon, 160 F.3d 1199, 1203 (8th Cir. 1998) ("[A] Bivens action cannot be prosecuted against the United States and its agencies because of sovereign immunity.").   A "prisoner may not bring a *Bivens* claim against the . . . BOP." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001). Accordingly, Plaintiff's official capacity claims and his claims against the Federal Bureau of Prisons and FCI-Forrest City fail as a matter of law.

### 2.    Personal Capacity Claims

Plaintiff brought suit against Defendants in their personal capacities, as well.   In determining whether Plaintiff's allegations may proceed under Bivens, the first question is whether his case is "the type for which a *Bivens* remedy is available." Farah v. Weyker, 926 F.3d 492, 497 (8th Cir. 2019).   The United States Supreme Court has recognized an implied cause of action under Bivens on only three occasions.   (Id. at 497-98).   The three cases in which the Supreme Court recognized a Bivens claim included: the ground-breaking Bivens case itself, 403 U.S. 388 (allegedly unlawful arrest and warrantless search in violation of the Fourth Amendment); Carlson v. Green, 446 U.S. 14 (1980) (failure to treat prisoner's asthma in violation of the Eighth

4

Amendment); and <u>Davis v. Passman</u>, 442 U.S. 228 (1979) (sex discrimination in violation of Fifth Amendment due process rights).

In a more recent case, the Supreme Court warned that while "*Bivens* is well-settled law in its own context . . . expanding the *Bivens* remedy is now a 'disfavored' judicial activity."   <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1857 (2017).   Indeed, the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants  . . . ."   <u>Id</u>. (internal citation omitted).   "[F]or almost 40 years, [the Supreme Court] [has] . . . rebuffed requests to add to the claims allowed under *Bivens*."   <u>Hernandez v. Mesa</u>, 140 S. Ct. 735, 743 (2020).   Instead, "private rights of action to enforce federal law must be created by Congress."   <u>Id</u>. at 742 (internal citation omitted).

Courts now undertake a two-step analysis to determine if an implied cause of action under <u>Bivens</u> exists.   <u>Farah</u>, 926 F.3d at 498. The first step is to ascertain whether the case presents "one of 'the three Bivens claims the [Supreme] Court has approved in the past' or whether, instead, allowing the plaintiffs to sue would require us to extend <u>Bivens</u> to a new 'context.'"   <u>Id</u>.   If the claim presented is not one that has been previously recognized, courts consider whether "special factors counsel[] hesitation" in extending <u>Bivens</u> to the claims at hand.   <u>Id</u>.

### a.   Recognized Bivens Claim: Deliberate Indifference to Serious Medical Needs

Plaintiff alleges he was denied medical care after he was assaulted by other inmates.   A plaintiff may pursue a deliberate indifference to serious medical needs claim in an <u>Bivens</u> action. See <u>Carlson v. Green</u>, 446 U.S. 14 (1980).

The Eighth Amendment prohibits cruel and unusual punishment.   U.S. CONST. AMEND. VIII.   This prohibition gives rise to the government's duty to provide medical care to prisoners. "The government has an 'obligation to provide medical care for those whom it is punishing by

incarceration." Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir. 2015) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)). It follows that the "Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners." Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002) (internal citation omitted). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Schuab v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011) (internal citation omitted). "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). To succeed on a claim of deliberate indifference to a medical need, a plaintiff must show he had an objectively serious medical need and prison officials had actual knowledge of, but deliberately disregarded, that need. See Washington v. Denney, 900 F.3d 549, 559 (8th Cir. 2018); McRaven v. Sanders, 577 F.3d 974, 981 (8th 2009).

Much of the Complaint is written in terms of "Plaintiffs," plural, but some allegations are specific to Plaintiff. (Doc. No. 1 at 29-40). Plaintiff explains that he was attacked by another inmate—he was "knocked to the ground and repeatedly kicked, punched, bitten, and hit with unknown objects all over [his] body . . . ." (Id. at 30). After Plaintiff collapsed on some stairs, multiple COs ran up the stairs, some passing Plaintiff and others stopping in front of Plaintiff. (Id. at 31). A Defendant CO Burton repeatedly asked Plaintiff to get up so he could go down the stairs. (Id.). At the same time, Defendants COs Eason and McKane attempted to lift Plaintiff's head, but once they saw that Plaintiff's nose was bleeding, they placed Plaintiff "back on the steps and called for called for gloves." (Id.). Plaintiff told "the COs" that his neck hurt, he could not

walk, something was wrong with his eyes, and he could not feel his hand and arm." (Id.).   A CO "then had a cart brought"; Plaintiff was helped down the stairs by COs and placed on the cart. (Doc. No. 1 at 31).

Plaintiff was then driven to a Lieutenant's office and was secured inside "by an unknown correctional officer." (Id.).   When Plaintiff told the CO that Plaintiff need to vomit, the CO helped Plaintiff to a bathroom; once Plaintiff was finished, the CO helped Plaintiff to a chair and gave Plaintiff paper towels for Plaintiff's bleeding nose. (Id. at 31-32).   The CO asked Plaintiff to describe his symptoms, and then "said he wanted to see if someone from medical was still around to check on [Plaintiff]." (Id.).   No one from medical, however, was responding. Plaintiff told the CO that his "neck was hurting and anytime [Plaintiff] tried to turn [his] head [it] caused [Plaintiff] great pain." (Id.).   The CO advised Plaintiff to keep his head as still as possible. (Id.).

An unidentified Lieutenant then came into the office and asked Plaintiff to approach.   The Lieutenant asked the CO if Plaintiff had said anything about being attacked, to which the CO explained Plaintiff had only mentioned his injuries. (Doc. No. 1 at 32).   The CO then recounted Plaintiff's medical complaints. (Id. at 32-33).   The CO purportedly told the Lieutenant that he thought Plaintiff "needs to go out cause medical already left." (Id. at 33).   The Lieutenant responded that "he would not be sending [Plaintiff] out they were already short staffed." (Id.). Plaintiff asked to "see medical," and the Lieutenant told Plaintiff that he "would be seen when [he] got over to the SHU." (Id.).   In preparation for moving Plaintiff to the SHU, the CO told Plaintiff to stand up and put his hands behind his back to be cuffed. (Id.).    Plaintiff said it was painful to do so. (Doc. No. 1 at 34).   The Lieutenant then told the CO to walk Plaintiff uncuffed to the SHU, and to cuff Plaintiff upon arrival at the SHU door. (Id.).   Plaintiff, uncuffed, was escorted

to the SHU, and once there, the CO cuffed Plaintiff with Plaintiff's hands in front of his body. (Id.).

Plaintiff's claims as currently pled do not establish deliberate indifference on the part of Defendants Burton, Eason, McKane, or the CO who took Plaintiff to the Lieutenant's office. Plaintiff alleged only that Defendant Burton asked Plaintiff to stand.   Plaintiff asserted Defendants Eason and McKane attempted to lift Plaintiff's head, but once they saw his nose bleed, they called for gloves.   Without more, these allegations do not show that these Defendants were aware of, but ignored, Plaintiff's serious medical needs.   And the CO who helped Plaintiff down the stairs and onto the cart, as well as the CO who was with Plaintiff at the Lieutenant's office, each offered Plaintiff assistance.   Plaintiff alleged the Lieutenant refused to send Plaintiff out when no medical staff was available on site, and told Plaintiff that he would be seen by medical when he reached the SHU.   Plaintiff did not identify the Lieutenant by name.

The Court finds Plaintiff's claim against the Lieutenant is appropriate for service.   But the Court cannot order service without a name.

### b.    New Context: Failure to Protect; Failure to Train or Supervise

Plaintiff alleges failure to protect and failure to train or supervise.   While these claims and Carlson arise under the Eighth Amendment, the facts of the cases and the nature of the alleged violations are different.   As such, the Court must determine if the differences "'are meaningful enough to make [this] context a new one.'"   Farah, 926 F.3d at 498.   "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."   Hernandez, 140 S. Ct. at 743.   The context will be considered new if "the case is different in meaningful way from the previous *Bivens* cases"

decided by the Supreme Court.   Abbasi, 137 S. Ct. at 1859.   In deciding whether a context is new, courts consider the following factors, among others:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; [and] the presence of potential special factors that previous Bivens cases did not consider.

Farah, 926 F.3d at 498 (citing Abbasi, 137 S. Ct. at 1859-60).   A case presents a new context when "[n]o Supreme Court case exactly mirrors the facts and legal issues presented" in a lawsuit.  Id.

No earlier Supreme Court case closely resembles Plaintiff's failure to protect or failure to train or supervise claims.   Plaintiff's claims, then, present a new context.   The Court underscores that failure to protect and failure to train or supervise claims differ significantly in their factual underpinnings and elements from a deliberate indifference to serious medical needs claim.

### c.    Special Factors Counseling Hesitation

Because the Court determined Plaintiff's claims present a new context, analysis of whether to extend Bivens continues to the second step: do any "special factors counsel[] hesitation" in allowing the case to proceed as a new Bivens cause of action in the absence of affirmative action by Congress?   Farah, 926 F.3d at 498.

The Court finds there are special factors that counsel hesitation in allowing this case to proceed under Bivens.   First, an inmate could seek relief through the BOP's grievance procedure. Allowing Plaintiff's claims to proceed under Bivens would engage the courts in disputes that could be and should be raised administratively, which is disfavored.   (Abbasi, 137 S. Ct. at 1865; Farah, 926 F.3d at 501-02; 28 C.F.R. §§ 542.10 et seq.   Indeed, "the [Supreme] Court has . . . made clear that even remedies that provide no compensation for victims and little deterrence for violators . . .

9

trigger the general rule that when alternative methods of relief are available, a *Bivens* remedy usually is not." Farah, 926 F.3d at 502. Next, to the extent Plaintiff's injuries arise from any Defendant's negligence, Plaintiff may pursue a claim under the Federal Torts Claim Act. 28 U.S.C. § 1346. Additionally, "Congress is usually 'in the better position' to weigh the costs and benefits of creating 'a new substantive legal liability.'" Ahmed v. Weyker, 984 F.3d 564, 570 (8th Cir. 2020) (internal citation omitted). And, not to be left out of the equation are the resources that would be needed to address such cases in the judiciary. Id. at 570-71. Taken together, these special factors counsel hesitation in creating a new Bivens cause of action.

Accordingly, these allegations fail as a matter of law. The Court also notes that even if Plaintiff had a protected liberty interest in the grievance procedure or extra time in a halfway house or home confinement, these claims too would fail under the same analysis set out above.

### III.   Plaintiff's Motion for Order

Plaintiff also filed a Motion for Order. (Doc. No. 7). In his Motion, Plaintiff points out that some of the claims in the Complaint are specific to Plaintiff. (Id. at 1). Plaintiff also asks the Court to add to this lawsuit the second inmate identified as a Plaintiff, to send the inmate "everything that has been filed in this case," and to order the Federal Bureau of Prisons to allow Plaintiff to write the other inmate regarding this lawsuit. Plaintiff's Motion (Doc. No. 7) is DENIED.

### IV.   Amended Complaint

Plaintiff may amend his Complaint (Doc. No. 1) to cure the defects explained above. If Plaintiff decides to amend, Plaintiff should submit to the Court, within thirty (30) days of the entry date of this Order, a superseding Amended Complaint that contains in a single document his claims against all Defendants he is suing. Plaintiff is cautioned that an Amended Complaint renders his

original Complaint (Doc. No. 1) without legal effect.[2]   Only claims properly set out in the

Amended Complaint will be allowed to proceed.   Therefore, Plaintiff's Amended Complaint

should: **1) name each party he believes deprived him of his constitutional rights and whom**

**he wishes to sue in this action; 2) provide specific facts against each named Defendant in a**

**simple, concise, and direct manner, including dates, times, and places if possible;   3) indicate**

**whether he is suing each Defendant in his/her individual or official capacity, or in both**

**capacities; 4) explain the reasons for an official capacity claim, if he makes one; 5) explain**

**how each defendant's actions harmed him personally; 6) explain the relief he seeks; and 7)**

**otherwise cure the defects explained above and set out viable claims.**

Plaintiff should note that it is his responsibility to provide the names or information about

Defendants for service.   See Lee v. Armontrout, 991 F.2d 487, 489 (8th Cir. 1993) (per curiam);

see also FED. R. CIV. P. 4(m) (providing that any defendant who is not served within ninety (90)

days after the filing of the Complaint is subject to dismissal without prejudice).   Any Defendant

who is not timely served may be dismissed.

**V.     Conclusion**

1.     Plaintiff's Motion for Order (Doc. No. 7) is DENIED.

2.     Plaintiff is directed to identify by name the Lieutenant referred to in Plaintiff's

deliberate indifference to serious medical needs claim within thirty (30) days of the date of this

Order.   If Plaintiff does not do so, and the Lieutenant is not served, I will recommend Plaintiff's

claims against the Lieutenant be dismissed.   Armontrout, 991 F.2d at 489; FED. R. CIV. P. 4(m).

---

[2] "An amended complaint 'ordinarily supersedes the original and renders it of no legal effect.'" In Home Health, Inc. v. Prudential Ins. Co. of America, 101 F.3d 600, 603 (8th Cir. 1996), quoting International Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1994) (other citations omitted).

3.      If Plaintiff wishes to submit an Amended Complaint for the Court's review, he must file the Amended Complaint consistent with the above instructions within thirty (30) days from the date of this Order.   If Plaintiff does not submit an Amended Complaint, I will recommend that Plaintiff's claims—except his deliberate indifference to serious medical needs claims against the Lieutenant—be dismissed for failure to state a claim upon which relief may be granted.   See 28 U.S.C. § 1915(e)(2); Loc. R. 5.5(c)(2).

4.      The Clerk of the Court is directed to mail Plaintiff a blank 42 U.S.C. § 1983 Complaint form.

IT IS SO ORDERED this 8th day of November, 2022.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE